IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

AMY P. MCLEAN                                                                                     PLAINTIFF

VS.                                                    CIVIL NO. 04-3048

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                   DEFENDANT

### MEMORANDUM OPINION

Amy McLean ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB"), under Title II, and supplemental security income ("SSI") benefits, under Title XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were protectively filed on October 23, 2002, alleging an onset date of June 21, 2001, due to panic disorder with agoraphobia, anxiety, depression, irritable bowel syndrome ("IBS"), migraines, and insomnia. (Tr. 13, 53-55, 77). An administrative hearing was held on February 10, 2004. (Tr. 289-330). Plaintiff was present and represented by counsel.

On February 23, 2004, the Administrative Law Judge ("ALJ"), issued a written opinion finding that, although severe, plaintiff's generalized anxiety and depressive disorders did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 18). After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ( "RFC"), to perform the exertional requirements of heavy work. (Tr. 16, 18). However, due to her mental impairments, he determined that she was limited to performing tasks involving only incidental contact with the general public, co-workers, and supervisors, and jobs that

were task driven, rather than production oriented. With the assistance of a vocational expert, he then found that plaintiff could still perform the positions of janitor and food preparation worker. (Tr. 18-19).

The Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties were afforded an opportunity to file appeal briefs, however, the plaintiff chose not to do so. (Doc. # 8).

**Evidence Presented:**

At the time of the administrative hearing, plaintiff was twenty-seven years old and possessed a high school education with two years of college credit. (Tr. 83, 295-296). The record reflects that plaintiff has no vocationally relevant past work experience, as none of her past jobs lasted long enough or paid well enough to constitute substantial gainful activity. (Tr. 13, 60-70).

Plaintiff testified that she had been diagnosed with anxiety disorder with agoraphobia, which caused her to avoid crowded areas. (Tr. 308). However, she indicated that she lived alone with her eight-month-old child. (Tr. 303). In fact, plaintiff stated that the baby's crying did not affect her, and that she and the baby were doing "well." (Tr. 308). She also reported working at various jobs for short periods of time after her onset date, alleging that she had to quit due to her anxiety. (Tr. 13).

The pertinent medical records reveal the following. On June 10, 2001, Dr. George Lawrence noted that plaintiff had a history of anxiety and chronic pelvic pain. (Tr. 187). When he refilled her prescription for Xanax, the pharmacy called to say that plaintiff had received another prescription for Xanax from another doctor in late May. (Tr. 187).

On July 17, 2001, plaintiff complained of pelvic pain. (Tr. 187). Dr. Lawrence prescribed

-2-

Celebrex and referred her to a gynecologist. (Tr. 187). Then, on August 20, 2001, Dr. Lawrence denied her request for an early refill of Xanax. (Tr. 187).

On January 7, 2002, plaintiff had an initial consultation with Dr. Stephen Dollins, a psychiatrist. (Tr. 203-204). She reported a history of anxiety and panic attack disorder. Plaintiff stated that she had undergone treatment at Ozark Counseling Services. However, she complained of problems getting her Xanax prescription from her primary care physician. Dr. Dollins noted that she had a blunt affect and appeared to be nervous. Plaintiff also experienced difficulty maintaining employment, due to her anxiety and other medical problems. As such, Dr. Dollins diagnosed her with generalized anxiety disorder, and prescribed Elavil and Alprazolam. However, he told plaintiff that he would be her sole provider of Alprozolam. Dr. Dollins then directed her to discontinue the Prozac. (Tr. 203-204).

On January 10, 2002, plaintiff had a follow-up appointment with Dr. William Dyer concerning her abdominal pain, irregular bowel habits, gastroesophageal reflux symptoms, and endometriosis. (Tr. 173-174). Dr. Dyer noted that she had undergone a laparoscopy for her endometriosis, which did not improve her symptoms. However, since beginning the Dicyclomine, he indicated that she was doing very well. Her bowels were much more regular, the nausea and pain had resolved, and she had experienced no further reflux. Further, the Amitriptyline had also reportedly improved her anxiety and depression symptoms. As her physical examination was normal, Dr. Dyer diagnosed her with resolved IBS. (Tr. 174).

On January 28, 2002, Dr. Dollins directed plaintiff to discontinue the Xanax. (Tr. 203). He prescribed Klonopin to be taken in its place. (Tr. 203).

On April 12, 2002, records from Dr. Dollins' office indicate that plaintiff was feeling bad. (Tr.

AO72A
(Rev. 8/82)

202). He assessed her as being irritable and hostile, threatening to walk out of her appointment. She was also very pessimistic about her medications. However, plaintiff was neither suicidal nor psychotic. Therefore, Dr. Dollins prescribed a trial of Serzone. He then directed her to continue taking Klonopin, Serzone, and AMI. (Tr. 202).

On June 3, 2002, plaintiff indicated that she was feeling better and had been back to work. (Tr. 201). However, she complained about having to work too many hours. Dr. Dollins noted that she was euthymic, but he documented no suicidal or psychotic symptoms. Therefore, he directed her to continue her current medications. (Tr. 201).

On June 20, 2002, plaintiff stated that she had lost her job, since her last appointment with Dr. Dollins. (Tr. 200). According to her self report, she had bottomed out and had been irritable and labile. However, when she tried to increase her Celexa dosage, on her own, she experienced tremors. No other medication side effects were noted. As a result, Dr. Dollins added Zyprexa to treat her lability. (Tr. 200).

This same date, Dr. Dollins completed a statement of employability, indicating that plaintiff was unable to work at employment of any kind, due to panic disorder with agoraphobia and manic depression. (Tr. 199). He noted that her disability was temporary, but that it probably would not resolve within the next six months. (Tr. 199).

On August 5, 2002, plaintiff indicated that the Zyprexa was working "fairly well." (Tr. 198). She stated that she was alternating between taking it regularly and using it on an as needed basis. Dr. Dollins directed her to continue taking it, as she appeared to be doing better. (Tr. 198).

On November 8, 2002, Dr. Dollins noted that plaintiff had held up reasonably well, and seemed better from an emotional perspective. (Tr. 197). Dr. Dollins had discontinued the Zyprexa and

AO72A
(Rev. 8/82)

Klonopin, but directed her to continue taking the anti-depressants. In spite of this, she was reportedly euthymic and anxious, with coherent thinking, an intact memory, and no suicidal or psychotic symptoms. (Tr. 197).

On November 19, 2002, plaintiff complained of constipation, irritability, and nausea. (Tr. 181). She had reportedly lost eight pounds and was now pregnant. Dr. Lawrence diagnosed her with IBS, gave her a prescription for Phenergan, and directed her to restart the Dicyclomine and Metamucil. (Tr. 181).

On February 5, 2003, progress notes from Dr. Dollins indicate that plaintiff was doing "ok." (Tr. 196). She had experienced some depression, but was less irritable. Further, she was coherent, had an intact memory, and reported no suicidal or psychotic symptoms. In spite of her pregnancy, Dr. Dollins noted that she had remained compliant with her medications, which included Lexapro, Trazodone, and Hydroxyzine. (Tr. 196).

On May 5, 2003, Dr. Dollins noted that plaintiff had held up fairly well throughout her pregnancy. (Tr. 271). She had tolerated her medications "ok." Further, records indicate that she was euthymic, coherent, and logical, with no suicidal or psychotic symptoms. As such, Dr. Dollins directed her to continue her current medications. (Tr. 271). Her baby was born on May 28, 2003. (Tr. 272).

On August 5, 2003, plaintiff was still reportedly holding up fairly well. (Tr. 272). Although she had reported some rough times, she was having a "pretty good" day. (Tr. 272).

In November 2003, plaintiff again saw Dr. Dollins. (Tr. 273). She indicated that it had been a difficult month for her. Her boyfriend had reportedly passed away. However, the Buspar was helping her. She continued to be euthymic, exhibiting no suicidal or psychotic symptoms. Accordingly Dr. Dollins directed her to discontinue the Doxepin, but to continue all other medications.

-5-

(Tr. 273).

On February 4, 2004, plaintiff reported feeling stressed. (Tr. 274). Notes from Dr. Dollins' office indicate that her mood was anxious. He stated that he did not feel that she could handle the stress of trying to work. (Tr. 274).

This same date, Dr. Dollins completed a mental RFC assessment. (Tr. 266-270). He indicated that he had been treating plaintiff on an outpatient basis since January 2002. Since that time, Dr. Dollins had diagnosed plaintiff with generalized anxiety and depressive disorder not otherwise specified. He noted that her prognosis was fair, and that she had a global assessment of functioning score of forty. Dr. Dollins reported that plaintiff's treatment consisted of medication management via Lexapro, Trazodone, and Buspar. The only noted side effect of these medications was sedation. Her symptoms were said to include a sad mood, anxiety, and very low stress tolerance. Dr. Dollins reported that she was seriously limited with regard to her ability to remember work-like procedures; understand and remember very short and simple instructions; carry out short instructions; maintain regular attendance; sustain an ordinary routine; work with or near others; make simple work-related decisions; work at a consistent pace; ask simple questions or request assistance; get along with co-workers or peers without unduly disrupting; deal with normal work stress; be aware of normal work hazards; set goals; interact appropriately with the public; and, maintain appropriate behavior, neatness, and cleanliness. (Tr. 268-269). He then indicated that plaintiff was unable to maintain attention for two hours or more; complete a normal workday; accept instructions and criticism; understand, remember, and carry out detailed instructions; deal with the stress of semi-skilled work; travel in unfamiliar places; and, use public transportation. Dr. Dollins also stated that plaintiff would be likely to miss four or more days of work per month. (Tr. 269).

-6-

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir.2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir.2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process

to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir.1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's

complaints were not fully credible. The testimony presented at the hearing, as well as the medical evidence contained in the record, are inconsistent with plaintiff's allegations of disability.

The record clearly indicates that plaintiff was suffering from anxiety and depression. However, beginning in August 2002, Dr. Dollins repeatedly noted that plaintiff was doing "fairly well," and that her medication was working. (Tr. 196, 197, 271, 272). Although the record does contain a few reports indicating that plaintiff continued to experience the symptoms of her disorders, overall, the evidence suggests that these conditions were well controlled via the use of various medications. (Tr. 174). *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). In fact, in November 2003, plaintiff even stated that the medication was helping her symptoms. (Tr. 273). Additionally, Dr. Dollins repeatedly noted that plaintiff was neither psychotic nor suicidal. (Tr. 196, 197, 200, 201, 202, 271). Further, there is no evidence to suggest that plaintiff was ever hospitalized for her depression or anxiety. As such, we cannot say that plaintiff's condition was as severe as alleged.

Plaintiff also reported suffering from IBS. However, the evidence indicates that plaintiff only sought treatment for this impairment on two occasions during the relevant time period. *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). First, in January 2002, plaintiff was reportedly doing well on the Dicyclomine. (Tr. 174). Her bowels were much more regular, the nausea and pain had resolved, and she had experienced no further reflux. (Tr. 174). *See Roth*, 45 F.3d at 282. Then, in November 2002, plaintiff complained of constipation, irritability, and nausea. (Tr. 181). She had reportedly lost eight pounds and was now pregnant. Again, Dr. Lawrence diagnosed her with IBS, gave her a prescription for Phenergan, and directed her to restart

the Dicyclomine and Metamucil. (Tr. 181). Plaintiff made no further complaints concerning her IBS symptoms. According, we find substantial evidence to support the ALJ's conclusion that plaintiff's IBS symptoms were not as severe as alleged.

As for her migraine headaches, the medical records indicate that plaintiff last sought treatment for this disorder in April 2001. (Tr. 190). *See Edwards*, 314 F.3d at 967. At that time, she indicated that she had been to the emergency room on several occasions, and had been given Imitrex injections, which did not help. After diagnosing plaintiff with status migrainosis, Dr. L. Robinson gave her an injection of Nubain and a prescription for Vistaril. (Tr. 190). However, aside from receiving refills of her medication, plaintiff sought no further treatment for this condition. Similarly, there is no evidence to indicate that plaintiff was ever treated for insomnia. Accordingly, we cannot say that plaintiff's condition was disabling. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider).

Plaintiff's own testimony and reports concerning her daily activities are also inconsistent with her complaints of disability. On her supplemental disability outline, plaintiff indicated an ability to care for her personal hygiene, do the laundry, wash dishes, change the sheets, iron, vacuum/sweep, take out to trash, wash the car, mow the lawn, rake leaves, work in the garden, shop for groceries and clothing, go to the bank and Post Office, cook, pay the bills, use a checkbook, make change, drive familiar and unfamiliar routes, walk for exercise and errands, watch television, listen to the radio, play games, read, and visit friends and family. (Tr. 71-72). She later completed a questionnaire for her attorney, on which she reported going out to eat or to a movie on a monthly basis, watching children several times per day, sitting eight-hours during an eight-hour day, and standing and walking four hours during an eight-hour day. (Tr. 129, 130). Further, at the administrative hearing, plaintiff testified that she lived

alone, cared for her self and her eight-month-old daughter, worked on a baby scrapbook, watched television, and did some occasional cross stitching. (Tr. 295-96, 298-99, 303). Clearly, this level of activity belies plaintiff's complaints of pain and limitation. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television and drive indicated her pain did not interfere with her ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

We have also reviewed the testimony of plaintiff's mother, indicating that plaintiff had suffered from migraines since the second grade, and agoraphobia since she graduated from high school. (Tr. 310-311). Plaintiff's mother also stated that plaintiff suffered from insomnia, made worse by her anxiety. (Tr. 316). However, we note that the ALJ found this testimony to be unpersuasive. As this determination was well within the ALJ's province, we find no error. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf*, 3 F.3d at 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither

-11-

the medical evidence nor the reports concerning her daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to to perform work at all exertional levels, with her only limitation being seizure precautions. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the ALJ considered several RFC assessments prepared by non-examining medical consultants, the RFC assessment of plaintiff's treating physician, plaintiff's subjective complaints, and her medical records. On November 4, 2002, Dr. Dan Donahue, a non-examining,

-12-

consultative psychologist, completed a mental RFC assessment of plaintiff. (Tr. 175-179). After reviewing her medical records, he determined that she had moderate limitations regarding her ability to understand, remember, and carry out detailed instructions; maintain attention; complete a normal workweek; interact appropriately with the general public; set realistic goals; and, make plans independent of others. (Tr. 175-176). Further, Dr. Donahue concluded that plaintiff could perform work where the interpersonal contact was merely incidental to the work performed; the tasks were learned and performed by rote; the tasks involved few variables and little judgment; and, the job required simple supervision. (Tr. 177).

On December 5, 2002, Dr. Ronald Crow, a non-examining, consulting physician, completed a physical RFC assessment of plaintiff. (Tr. 219). After reviewing her medical records, he concluded that plaintiff's physical impairments were non-severe. This was affirmed by Dr. Linda Green on April 2, 2003. (Tr. 219).

On December 12, 2002, Dr. Donahue completed a psychiatric review technique form. (Tr. 205-218). Based on his review of plaintiff's medical records, he concluded that she was suffering from anxiety and depressive disorders. (Tr. 205, 212, 215). He then determined that she had mild restrictions concerning her activities of daily living and moderate limitations in the areas of social functioning and concentration. Dr. Donahue also found one or two episodes of decompensation. (Tr. 215). This was affirmed by Dr. Brad Williams on March 3, 2003. (Tr. 205).

While we are cognizant of Dr. Dollins' RFC assessment indicating that plaintiff was unable to handle the stress of working, like the ALJ, we are unable to reconcile his report with his treatment records. Throughout his progress notes, Dr. Dollins stated that plaintiff was "holding up fairly well," and plaintiff reported that the medication was helping. (Tr. 197, 198, 201, 271, 272, 273, 274). Further,

-13-

he repeatedly noted that plaintiff was neither psychotic nor suicidal. In fact, the record contains no medical records to indicate that plaintiff had ever been hospitalized for her mental impairments. In addition, we also note that plaintiff's physical activities have not been limited by any of her treating physicians, nor has she reported any physical limitations to her physicians. *See Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) (holding that fact that no physician had limited plaintiff's physical activities weighed against plaintiff's subjective complaints). Therefore, given the nature of the medical evidence contained in the record and plaintiff's reports concerning her daily activities, we find substantial evidence to support the ALJ's determination that plaintiff has moderate limitations in the areas of social functioning and concentration, resulting in the ability to perform tasks involving only incidental contact with the general public, co-workers, and supervisors, and jobs that are task driven, rather than production oriented. (Tr. 15).

Finally, we address plaintiff's argument that the ALJ erred by finding that she could perform the positions of janitor and food preparation worker. (Tr. 18). A vocational expert testified that a person of plaintiff's age and education, who has an unlimited physical RFC, but who is limited to jobs with incidental contact with the general public, co-workers, and supervisors, and jobs that are task oriented rather than production driven, could perform the unskilled jobs of food preparation worker, stock handler, and janitor. (Tr. 319-320). Given the fact that this testimony included all of the limitations accepted as true by the ALJ, we cannot say that it was improper. *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992) (holding that vocational expert's response to a hypothetical question provides substantial evidence to support an ALJ's decision, where the hypothetical question sets forth the claimant's impairments with reasonable precision). Further, as the vocational expert testified that her testimony was consistent with the information contained in the *Dictionary of Occupational Titles*,

AO72A
(Rev. 8/82)

it is clear that plaintiff's impairments do not prevent her from performing all work-related activities.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this the 24th day of August 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)